UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SLY and RAYMOND WARD,

       Plaintiffs,

v.                                    CIVIL NO. 06-12400
                                       HON. LAWRENCE P. ZATKOFF

DFCU FINANCIAL FEDERAL CREDIT UNION,
HAROLD LOWMAN, and J. PAUL CONWAY,

       Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 26, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss (docket #11), filed on June 26, 2006. Plaintiffs have responded, and Defendants have replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

### II. BACKGROUND

Dearborn Federal Credit Union ("DFCU") was founded in 1950 as a credit union for

employees of Ford Motor Company. DFCU is currently a federal credit union with approximately 160,000 members. DFCU accepts members from approved employers, including Ford Motor Company, Visteon, and Oakwood Hospital.

At an annual meeting in February 2006, the possibility of converting DFCU to a mutual savings bank was discussed. In March 2006, the Board of Directors of DFCU ("the Board") sent notice to DFCU members of its conversion proposal, and set a date of June 21, 2006, for a vote on the proposal. Several members of DFCU, including Plaintiffs, opposed the conversion, and requested to inspect the books and records concerning the conversion. The Board only allowed a limited inspection, which was not satisfactory to the members opposing conversion.

In response to the Board's refusal to allow full inspection, approximately 1,762 members of DFCU signed a request for a special meeting of the members pursuant to Article IV, Section 3 of the DFCU bylaws. The bylaws provide that the Board must call a special meeting within thirty days of receipt of a request from 500 or more members. The purpose of the meeting was to vote on the removal of each of the nine directors on the Board. The request was served on the Board on April 18, 2006. The day after, on April 19, the Board withdrew the application to convert to a mutual savings bank.

The Board declined to hold the special members meeting, claiming that it would violate the Federal Credit Union Act ("FCUA") and National Credit Union Administration ("NCUA") regulations. Specifically, the Board claimed that because the FCUA requires a federal credit union to have at least five directors, the removal of all the directors would violate the FCUA. See 12 U.S.C. § 1761(a).

Plaintiffs, two members of DFCU, filed suit for injunctive relief on May 26, 2006. Plaintiffs

have also filed a motion to add a Plaintiff, another member of DFCU. Plaintiffs have filed a motion for a preliminary injunction, asking for the same relief as sought in the underlying complaint. Defendants filed the instant motion to dismiss on June 26, 2006. Defendants seek to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim).

### III.  LEGAL STANDARD

**A.      Motion to Dismiss under 12(b)(1)**

"When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff may defeat the motion "by showing any arguable basis in law for the claim made." *Id.* "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of New York v. County of Oneida*, 414 U.S. 661, 666 (1974)).

**B.      Motion to Dismiss under 12(b)(6)**

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiff's claims.

The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal

conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Furthermore, the Court need not accept as true legal conclusions or unwarranted factual inferences. The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

In deciding a motion to dismiss pursuant to FED R. CIV. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to FED. R. CIV. P. 56. *See* FED. R. CIV. P. 12(b). Deign

## IV.  ANALYSIS

A statement the Seventh Circuit made in *Barany v. Buller*, 670 F.2d 726 (7th Cir. 1982), applies equally well to the case at hand: "Although the factual setting is uncomplicated, this case presents surprisingly complex legal issues concerning the availability of federal relief." *Id.* at 727.

"The United States district courts are not courts of general jurisdiction." *Graves v. Administrator of FMHA of the USDA*, 541 F.2d 159, 161 (6th Cir. 1976). A plaintiff has a federal cause of action only when a federal law creates the cause of action, or the plaintiff's right to relief necessarily depends on a substantial question of federal law. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). Defendants argue that the FCUA does not provide an explicit or implicit private cause of action. *See Smith v. Dearborn Financial Services, Inc.*, 982 F.2d 976, 979 (6th Cir. 1993). Plaintiffs do not contest this, but argue that the Court should recognize a cause

4

of action under federal common law.

Plaintiffs primarily rely on *Barany*, and *Rosenberg v. AT & T Employees Federal Credit Union*, 726 F. Supp. 573, 579 (D.N.J. 1989).  In *Barany*, the plaintiffs served on the credit committee of a federal credit union.  Following a dispute, the board of the credit union removed the plaintiffs from the credit committee.  The plaintiffs brought suit, claiming that their removal by the board violated the FCUA, which empowers the supervisory committee, not the board, to remove members of the credit committee.  After holding that the FCUA did not provide a private right of action, the Seventh Circuit held that the plaintiffs had a remedy under federal common law.

The Seventh Circuit noted that "there is 'no federal general common law.'"  *Barany*, 670 F.2d at 731 (quoting *Erie Railroad Co. V. Tompkins*, 304 U.S. 64, 78 (1938)).  However, there are two exceptions: when a federal rule of decision "is necessary to protect uniquely federal interests" and when "Congress has given the courts the power to develop substantive law."  *Id.* (citations omitted).  The Seventh Circuit held that the FCUA evinced a unique federal interest in the administration of federal credit unions.  *Id.* at 733-35.  Thus, the plaintiffs were entitled to a quo warranto proceeding (a proceeding to determine one's right to an office) in federal court.  *Id.* at 735.

In *Rosenberg*, the plaintiff attempted to run for a vacancy on the board of directors of a federal credit union.  Rather than hold an election, the board reduced the number of directors.  The plaintiff alleged that this action violated the credit union's bylaws, and brought suit in the District of New Jersey.  The district court held that the FCUA did not provide a private right of action. *Rosenberg*, 726 F. Supp. at 577.  However, the district court held that a remedy was available under federal common law.  Relying on *Barany*, the district court held that there was a unique federal interest in the uniform administration of federal credit unions.  The district court noted that the

action to enforce the bylaws was essentially a breach of contract action, and held that "[i]f enforcement of [the bylaws regarding elections] depended upon the vagaries of applying the law of fifty different states, the democratic control intended by Congress might be thwarted." *Id.* at 579.

In response, Defendants note that *Barany* has been rejected by the Fourth and Ninth Circuits, and its holding has been undercut by Supreme Court pronouncements regarding federal common law.

In *Ridenour v. Andrews Federal Credit Union*, 897 F.2d 715 (4th Cir. 1990), the Fourth Circuit considered whether to recognize a federal common law right of action for the alleged wrongful removal of a director of a federal credit union. The Fourth Circuit held that:

> The category of unique federal interests justifying the creation of federal common law has been sharply circumscribed by the Supreme Court. Sufficient interests have been found only in cases involving "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty . . . ."

*Id.* at 722 (quoting *Texas Industries v. Radcliff Materials*, 451 U.S. 630, 641 (1981)). The Fourth Circuit also noted that "Federal courts lack authority to impose more stringent [standards] under federal common law than those imposed by the agency charged by Congress with administering the comprehensive scheme." *Id.* Significantly, the NCUA decided "not to give the bylaws that govern removal of board members the authority of an agency regulation." *Id.* For the preceding reasons, the Fourth Circuit rejected *Barany* and declined to recognize a federal common law cause of action.

The Sixth Circuit has not yet considered whether there is a federal common law cause of action for breach of a federal credit union's bylaws. However, a related issue was decided in *Smith v. Dearborn Financial Services, Inc.*, 982 F.2d 976 (6th Cir. 1993). In *Smith*, the plaintiff claimed

6

that the defendant credit union violated a NCUA regulation that allows credit unions to sell insurance to their members only at cost. When considering whether the plaintiff had a cause of action under federal common law, the Sixth Circuit noted that:

> Absent Congressional authorization to formulate substantive rules of decision, "federal common law" exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate or international disputes implicating the conflicting rights of the States or relations with foreign nations, and admiralty cases.

*Id.* at 981. Regarding *Barany*, the Sixth Circuit noted that the Seventh Circuit had based its holding "on the old common law remedy of quo warranto." *Id.* Furthermore, "the federal common law remedy of quo warranto has been available only in connection with proceedings over an individual's right to hold an office or position." *Id.* Thus, the facts in *Barany* were distinguishable from the facts in *Smith*. *Barany* was further distinguished because it involved the internal administration of a federal credit union.

Having distinguished *Barany*, the Sixth Circuit held that "no uniquely federal interest exists, and no conflict between the FCUA and the traditional power of the states to regulate insurance has been shown." *Id.* at 983. Thus, there was no need to fashion a remedy under federal common law.

In *Madias v. Dearborn Federal Credit Union*, 929 F. Supp. 1059 (E.D. Mich. 1996), the plaintiff claimed that the defendant credit union's bylaws violated the FCUA. The district court granted summary judgment for the defendant, holding that the bylaw in question did not violate the FCUA. Neither the parties nor the district court raised the issue of whether the case was properly in federal court.

After reviewing the preceding cases, the Court finds the analysis of *Ridenour* to be more persuasive than that of *Barany* or *Rosenberg*, for two principal reasons. First, *Ridenour's* analysis

of federal common law principles comports better with subsequent Supreme Court pronouncements regarding the subject. In *O'Melveny & Myers v. Federal Deposit Insurance Corporation*, 512 U.S. 79 (1994), the Supreme Court considered whether to fashion a federal common law rule of decision for a case involving the Federal Deposit Insurance Corporation ("FDIC"). The Supreme Court noted that cases warranting the creation of a federal common law rule of decision were "few and restricted," and "extraordinary." *Id.* at 87, 89. The Supreme Court held that such cases were "limited to situations where there is a 'significant conflict between some federal policy or interest and the use of state law.' Our cases uniformly require the existence of such a conflict as a precondition for recognition of a federal rule of decision." *Id.* at 87 (citations omitted). The Supreme Court was skeptical of the federal interest of uniformity, and referred to it as "generic" and "lightly invoked." *Id.* at 88. The Supreme Court further held that:

> Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty -- but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in "federal common-law" rules.

*Id.*

In *Atherton v. Federal Deposit Insurance Corporation*, 519 U.S. 213 (1997), the Supreme Court considered whether to fashion a federal common law standard of care for officers of a federally insured depository institution. The Supreme Court noted that it had once created federal common law corporate governance standards for federally chartered banks. However, these rules did not survive the demise of federal common law handed down in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The Supreme Court held that "[t]o point to a federal charter by itself shows no conflict, threat, or need for 'federal common law.'" *Atherton*, 519 U.S. at 223. The Supreme Court found that applying state governance standards to federally-chartered banks would not create a

"significant conflict with, or threat to, a federal interest." *Id.* at 225.

Although both *Barany* and *Rosenberg* rely heavily on the federal interest in the uniform administration of federal credit unions, neither decision provides concrete examples of how the use of state law would create a significant conflict with a federal interest. *Rosenberg* claims that "uniformity would likely be frustrated if state laws were to provide the remedy for a breach of bylaws." *Rosenberg*, 726 F. Supp. at 578. However, this conclusory statement is insufficient to justify a remedy that the Supreme Court has explicitly limited to extraordinary cases.

The Court's second concern with *Barany* and *Rosenberg* is that neither decision gave sufficient weight to the failure of Congress to provide a private right of action in the FCUA. In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), the Supreme Court held that:

> Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system. . . . . We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Id.* at 814.

Likewise, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, __ U.S. __, 165 L. Ed. 2d 131 (2006), the Supreme Court considered whether the case contained a federal question. The case involved "a dispute about the meaning of terms in a federal health insurance contract. The contract, between a federal agency and a private carrier, [set] forth the details of a federal health insurance program created by federal statute and covering 8 million federal employees." *Id.* at 151 (Breyer, J., dissenting). Appellants had argued in the court below that the case "implicated 'uniquely federal interests,' because . . .Congress had expressed its interest in maintaining uniformity among the

States on matters relating to federal health-plan benefits." *Id.* at 142 (citations omitted). However, the Supreme Court found Congress' failure to create a federal cause of action determinative:

> Had Congress found it necessary or proper to extend federal jurisdiction further, in particular, to encompass contract-derived reimbursement claims between carriers and insured workers, it would have been easy enough for Congress to say so. Cf. 29 U.S.C. § 1132(a)(3) (authorizing suit in federal court "by a participant, beneficiary, or fiduciary" of a pension or health plan governed by ERISA to gain redress for violations of "this subchapter or the terms of the plan"). We have no warrant to expand Congress' jurisdictional grant "by judicial decree."

Id. at 147 (citation omitted).

In the FCUA, Congress specifically granted federal jurisdiction for certain cases involving federal credit unions. For example, 12 U.S.C. § 1786(k) gives the district courts jurisdiction to enforce orders from the NCUA Board. However, it is undisputed that Congress did not create a private right of action in the FCUA for members to sue credit unions in federal court. Had Congress intended these suits to be brought in federal court, it could easily have said so in the FCUA. Congress' failure to create a private right of action strongly argues against creating a remedy under federal common law.

The preceding concerns lead the Court to agree with *Ridenour's* criticism of *Barany* (and, by extension, *Rosenberg*). However, the Court need not decide today whether a federal cause of action pursuant to the FCUA is foreclosed in all circumstances. Any uniformity interests that may justify a federal cause of action are clearly not present in the instant case.

This is demonstrated by the fact that nowhere in their complaint do Plaintiffs allege that Defendants have violated federal law. Plaintiffs have three grievances against Defendant:

    1.    Failure to hold a special meeting as required by the bylaws;
    2.    Failure to allow inspection of documents; and
    3.    Use of credit union funds and employees to support the Board.

However, the relief Plaintiffs seek for complaints two and three is explicitly derived from state law. Plaintiffs' Motion for Preliminary Injunction, 12-15. Plaintiffs' claim regarding the failure to hold a special meeting is also a matter of state law. Plaintiffs' own evidence supports this interpretation: the declaration of Mark Treichel, regional director of the NCUA, states that a federal credit unions bylaws "are not agency regulations. The bylaws function as a contract between a federal credit union and its members."

The NCUA has consistently taken this position. In a 2003 opinion letter, the NCUA stated that:

> NCUA's longstanding policy is not to become involved in election or bylaw disputes, unless the alleged violation poses a safety and soundness concern to the [federal credit union] or is a violation of the [FCUA]. . . . If you wish to pursue this or the other issues discussed above, we suggest you consult with your own local, legal counsel for an opinion based on New York state law.

NCUA Opinion Letter 03-0106 (Feb. 6, 2003). The NCUA has also stated that:

> NCUA's long standing view is the bylaws, among other effects, function as a contract between a credit union and its members. While NCUA provides guidance and interpretations of the bylaws, generally state corporate law, to the extent it is consistent with the Federal Credit Union Act and NCUA regulations, determines disputes regarding the enforcement of bylaw provisions.

70 Fed. Reg. 40924, 40930 (July 15, 2005).

The NCUA's position precludes the Court from fashioning a federal remedy for breach of the bylaws in these circumstances. As the Fourth Circuit noted in *Ridenour*, "Federal courts lack authority to impose more stringent [standards] under federal common law than those imposed by the agency charged by Congress with administering the comprehensive scheme." *Ridenour*, 897 F.2d at 722 (quoting *City of Milwaukee v. Illinois*, 451 U.S. 304, 320 (1981)). The NCUA, the agency charged by Congress with administering the FCUA, has declined to give the federal credit

union bylaws the weight of an agency regulation, and has stated that enforcement of the bylaws is generally undertaken pursuant to state corporate law. Thus, it would inappropriate for the Court to fashion a federal remedy for breach of the bylaws in this case.

Because the remedies Plaintiffs seek are derived from state law, Plaintiffs are in reality not seeking a federal rule of decision so much as a federal forum. It is true that Defendants have raised issues of federal law in their defense, but it is well settled that federal issues raised in a defense are insufficient to confer federal jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950). Thus, the only basis for fashioning a federal remedy is the fact that a federally charted credit union is involved. However, that basis (for a federally chartered bank) was rejected by the Supreme Court in *Atherton*. *Atherton*, 519 U.S. at 221.

Furthermore, the FCUA confers on federal credit unions the power "to sue and be sued." 12 U.S.C. § 1757. However, nowhere does the FCUA give federal credit unions the ability to sue and be sued in federal court. In *American National Red Cross v. S. G.*, 505 U.S. 247 (1992), the Supreme Court upheld federal jurisdiction in a case involving the Red Cross, because the Red Cross's charter "expressly [authorized] the organization to sue and be sued in federal courts." *Id.* at 257. The Supreme Court noted that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *Id.* at 255. As noted above, the FCUA's "sue and be sued" provision does *not* mention the federal courts. Thus, the sole fact that a federal credit union is party to a case is wholly insufficient to confer federal jurisdiction.

For the above reasons, the Court concludes that it would be inappropriate to recognize a federal common law remedy in this case. Furthermore, while the Court finds *Ridenour's* criticism

of *Barany* to be persuasive, the Court need not reject *Barany* to reach this decision. The Court is mindful of the fact that the Sixth Circuit has specifically disavowed any rejection of *Barany*. *Smith*, 982 F.2d at 981. As in *Smith*, the facts in this case are distinguishable from *Barany*. In *Barany*, the Seventh Circuit utilized the federal common law remedy of quo warranto, because the plaintiff claimed he had been removed from his position in violation of the FCUA. However, no violation of the FCUA has been alleged in this case.

The instant case is also distinguishable from *Madias*, the Eastern District of Michigan case briefly discussed above. The issue in *Madias* was whether a federal credit union's bylaws violated the FCUA, and the issue of federal jurisdiction was not raised. Here, however, the issue is whether a credit unions bylaws should be enforced by a federal court, not whether they violate federal law.

The final issue facing the Court is whether to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) or 12(b)(6) (failure to state a claim). Dismissal for lack of subject matter jurisdiction pursuant to 12(b)(1) is only appropriate where the claim is facially insubstantial or completely foreclosed by decisions of the Supreme Court. *Steel Co.,* 523 U.S. at 89

In *Ridenour,* the Fourth Circuit held that the case should be dismissed for failure to state a claim, rather than lack of subject matter jurisdiction:

> [W]e cannot say as a preliminary matter that the appellants' allegations that federal law gives them causes of action are so wholly insubstantial or patently without merit as to preclude federal jurisdiction. Although we disagree with its holding, at least one federal court of appeals has found a federal cause of action for discharged credit union employees as a matter of federal common law. *See Barany v. Buller*, 670 F.2d 726 (7th Cir. 1982). Because the appellants' contentions that federal law gives them a cause of action are not plainly insubstantial, we must take jurisdiction to address on the merits the federal question of the claims' existence thereby raised. We hold, however, that the asserted federal causes of action do not exist, and we will therefore affirm the district court's dismissal of these claims on the alternative ground that the

appellants failed to state a claim upon which relief could be granted.

*Ridenour*, 897 F.2d at 719.

Although the situation in *Ridenour* may seem analogous to the instant case, the Court finds that the instant case is most appropriately dismissed for lack of subject matter jurisdiction. Both the plaintiffs in *Ridenour* and *Barany* alleged violations of the FCUA in their complaints, and the assertions of federal jurisdiction were not facially insubstantial. However, as discussed above, Plaintiffs in the instant case allege no violations of federal law in their complaint, and thus the claim of federal jurisdiction is facially insubstantial. Furthermore, although there is no Supreme Court decision directly on point, the decisions discussed above implicitly foreclose Plaintiffs' assertions of federal jurisdiction. Plaintiffs' action is therefore dismissed for lack of subject matter jurisdiction.

## V.  CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is GRANTED. Plaintiffs' action is HEREBY DISMISSED without prejudice. All outstanding motions are DENIED as moot.

IT IS SO ORDERED.


                                             s/Lawrence P. Zatkoff
                                             LAWRENCE P. ZATKOFF
                                             UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2006

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 26, 2006.

                                          s/Marie E. Verlinde
                                          Case Manager
                                          (810) 984-3290